# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. FARINA, | ) | CASE NO. 5:18-CV-2734 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER OF TRANSFER |
| SIRPILLA RV CENTERS, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court for consideration of the following motions: (1) the motion of plaintiff to remand (Doc. No. 14 ["Mot. Remand"]), and (2) the motion of certain defendants to transfer venue to the Northern District of Indiana. (Doc. No. 13 ["Mot. Tr."].) Both motions are fully briefed and ripe for resolution. (Doc. No. 19 (Response to Motion to Remand ["Opp'n Mot. Remand"]);[1] Doc. No. 22 (Reply to Motion to Remand ["Reply Mot. Remand"]); Doc. No. 15 (Response to Motion to Transfer ["Opp'n Mot. Tr."]); Doc. No. 16 (Reply to Motion to Transfer ["Reply Mot. Tr."]).) For the reasons stated herein, the motion to remand is denied and the motion to transfer is granted.

## I. BACKGROUND

On October 25, 2018, plaintiff Michael Farina ("Farina") filed suit in state court. In his complaint, Farina alleged that, on August 10, 2018, he purchased a motor home from defendant

---

[1] Defendants Good Sam Enterprises, LLC ("Good Sam") and Timothy Caillett ("Caillett") filed a separate response in opposition to the motion to remand. (Doc. No. 20 ["Good Sam Opp'n Mot. Remand"].)

Sirpilla RV Centers, LLC, d/b/a Camping World RV Sales of Akron ("Camping World"). (Doc. No. 1-1 (Complaint ["Compl."]) ¶¶ 2, 9, 12.) The vehicle was a 2019 Seneca motor home manufactured by defendant Jayco, Inc. ("Jayco"), with a purchase price of $207,327.87. (*Id.* ¶¶ 5, 9, 15.) Of this amount, $12,280 represented a payment for an extended warranty issued by Good Sam. (*Id.* ¶ 9; *see id.* ¶ 14.) Farina made a down payment in the amount of $50,000 and took possession of the vehicle on August 11, 2018. (*Id.* ¶¶ 17, 21.)

Immediately after purchase, Farina observed that the "check engine" light would illuminate upon starting the vehicle. (*Id.* ¶ 22.) He also noticed "numerous other material problems and defects with the [m]otor [h]ome." (*Id.* ¶ 24.) Farina contacted Camping World and was advised by an employee that the "check engine" light warning was serious. (*Id.* ¶ 23.) On August 16, 2018, at the direction of Camping World, Farina returned the motor home for service. Camping World's service department advised Farina that they were unable to repair the motor home's engine. (*Id.* ¶ 25.) Camping World remains in possession of the motor home, which has been out of service by reason of repair for more than 30 days. (*Id.* ¶¶ 26, 27.)

Farina's complaint raises seven claims against defendants, as follows: the First Cause of Action alleges breach of warranties; the Second Cause of Action is a claim for violation of Ohio's lemon law, Ohio Rev. Code § 1345.75; the Third Cause of Action raises a claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2310(d); the Fourth Cause of Action is a claim under the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.09; the Fifth Cause of Action sounds in fraud; the Sixth Cause of Action alleges the breach of an extended warranty; and the Seventh Cause of Action seeks declaratory relief. Farina's prayer for relief also includes a request for "rescission of the transaction" and a recovery of related

damages, compensatory damages in the amount of the purchase price of the vehicle plus the cost of the extended warranty, cancellation of the loan, punitive damages for fraud, as well as an award of interest, costs, and attorney's fees. (*Id*. at 13-14.[2])

On November 27, 2018, defendants Jayco, Camping World, and Bank of America removed the action to federal court, citing the fact that Farina had asserted a claim under the MMWA. (Doc. No. 1 (Notice of Removal ["Not."]) at 1.) In support of removal, defendants contended that the complaint seeks more than the $50,000 amount in controversy, exclusive of interest and costs, required under the MMWA. (*Id*.) The following day (November 28, 2018), defendants filed their motion to transfer venue. Farina's motion to remand followed on December 11, 2018. Because the motion to remand raises the threshold question of the Court's jurisdiction over this matter, the Court will address it first.

## II. MOTION TO REMAND

The parties agree that the only source of federal jurisdiction in this case is Farina's claim under the MMWA. Although it is a federal statute, the Court's jurisdiction under the MMWA is limited by a $50,000 amount in controversy requirement. *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 757 (6th Cir. 2008). Claims brought under the MMWA are not cognizable in federal court "if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit[.]" 15 U.S.C. § 2310(d)(3)(B). When determining the amount in controversy, for purposes of jurisdiction under the MWA, the Sixth Circuit applies the "legal certainty" test. *Schultz*, 512 F.3d at 756 (collecting cases). "Under the legal certainty test, federal subject matter jurisdiction exists 'if there is a probability that the

---

[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

3

value of the matter in controversy exceeds the jurisdictional amount.'" *Id.* (quoting *Kovacs v. Chesley*, 406 F.3d 393, 397 (6th Cir. 2005)).

Farina argues that federal subject matter jurisdiction is lacking because the total amount in controversy is less than $50,000. In support of his argument, Farina relies primarily on *Golden v. Gorno Bros., Inc.*, 410 F.3d 879 (6th Cir. 2005), wherein the Sixth Circuit first announced the formula for determining whether the amount in controversy has been satisfied. There, the court held:

> [t]he finance charges of a contract should not be added when determining if the amount in controversy has been satisfied. Pursuant to that analysis, the amount in controversy . . . would be calculated by determining the difference between the cost of a replacement vehicle . . . and the present value of the [vehicle]. The resulting figure . . . would be further reduced by the value that [the purchaser] obtained from the [vehicle].

*Id.* at 885 (footnote omitted).

Defendants argue that the formula in *Golden* is inapplicable to the present case because Farina has sought the remedy of rescission and not revocation and, accordingly, the formula adopted by the Sixth Circuit for parties seeking rescission should guide the analysis. As in the present case, in *Harnden v. Jayco, Inc.*, 496 F.3d 579, 582 (6th Cir. 2007), the plaintiff brought suit against Jayco, alleging that the Jayco motor home he purchased was defective. Noting that the plaintiff alleged a breach of contract and requested the cancellation of his contract, the court in *Harnden* determined that the remedy sought was "more akin" to rescission than revocation. *Id.* Because the plaintiff sought the remedy of rescission, the Sixth Circuit held that the amount in controversy was determined by "the amount of [the] contract, without offset." *Id.*; *see Harris v. Gulf Stream Coach, Inc.*, 547 F. Supp. 2d 765, 770 (E.D. Mich. 2008) (finding that *Harnden* controls the calculation of the amount in controversy under the MMWA because the plaintiff

4

asserted a claim that the defendants breached an express warranty that was part of the parties' contract and requested the cancelation of the contract).

The Court finds it unnecessary at this juncture to determine whether Farina is seeking revocation or rescission because, under either formula, subject matter jurisdiction is satisfied. Under the *Harnden* formula, the amount in controversy easily exceeds the jurisdictional amount as the parties agree that the purchase price of the motor home, without offset, was $207,327.87. (*See* Compl. ¶ 9; Opp'n Mot. Remand at 219.)

To be sure, the amount in controversy would be lower if *Golden* controls the analysis. Pursuant to *Golden*, the Court starts with the $207.327.87 purchase price. From this figure, the Court deducts the present value of the vehicle and then further reduces that number by the value that Farina obtained from the vehicle. In support of a present value figure, defendants offer the affidavit of Phil Houser, Consumer Affairs Manager for Jayco. (Doc. No. 19-1 (Affidavit of Phil Houser ["Houser Aff."]) ¶ 2.) Houser opines that, based upon his experience in the industry, the present value of the motor home is $133,600. (*Id*. ¶ 14.) Houser arrives at this number by taking the wholesale value of the vehicle as of January 3, 2019 and as determined by the National Automobile Dealers Association ("NADA") of $167,000, and then discounting that number by 20% to represent a projected resale value of $133,600.[3] (*Id*. ¶¶ 13, 14.) *See, e.g., Goodwin v. Nissan N. Am., Inc.*, No. 3:11-cv-00306, 2013 WL 6827929, at *2 (M.D. Tenn. Dec. 20, 2013) (using trade in value for the present value of the vehicle).

Citing *Schultz*, Farina takes issue with this calculation, in part, because it depends on

---

[3] Houser averred that, in his experience, "[a]t resale, Jayco would, more likely than not, only be able to recover 65-70% of the NADA used wholesale value for [the] Jayco Seneca." (*Id*. ¶ 14.) Nevertheless, he discounted the NADA value by 20% to account for "the remote possibility of recovering 80% of the NADA wholesale value" on resale. (*Id*.)

values set by the NADA. (Reply Mot. Remand at 234.) In *Schultz*, defendants offered the NADA value of the motor vehicle in an attempt to demonstrate that the plaintiff vehicle owners *could not* meet the $50,000 jurisdictional amount in the MMWA. In rejecting this evidence, the Sixth Circuit noted that the NADA value "assumes the vehicle is in good condition; the NADA value in no way takes into account the devaluing effect of the non-conformities alleged by [p]laintiffs." *Schultz*, 512 F.3d at 758. In contrast, here, defendants are attempting to use the NADA, which again assumes a vehicle in good condition, to demonstrate the *existence of jurisdiction*. As Houser notes in his affidavit, under his analysis, the present value of the motor home would be reduced by any defects attributable to the vehicle. (Houser Aff. ¶ 15.) To the extent that the vehicle was plagued by defects, the present value would decrease and the difference between the purchase price and the present value would only increase, resulting in a greater amount in controversy.[4] As such, the Court finds that, if anything, Houser's estimated present value represents a conservative figure.

Continuing with the analysis, the Court further finds that the difference between the purchase price and the present value is, therefore, approximately $73,727.87. While neither party offers any evidence as to the value Farina derived from his use of the vehicle between August 11, 2018 and August 16, 2018, the Court need only be convinced to a legal certainty that the value of the "use" during these five days did not exceed $23,727.87 to find the statutory amount in

---

[4] Farina argues that, unless defendants are willing to stipulate that the motor home is defective, any proposed present value that assumes a value more than $50,000 below the purchase price would be "spurious." (Mot. Remand at 86.) However, the Court may look to the complaint allegations to satisfy itself that the jurisdictional amount has been met. *See Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 983 (7th Cir. 2002) (the amount in controversy "is determined by an evaluation of the controversy described in the plaintiff's complaint and the record as a whole"); *see also Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004) ("The existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal.") Here, Farina's allegations clearly aver that the motor home is defective. Indeed, such factual allegations are the cornerstone of Farina's lawsuit.

controversy met. The Court is so convinced.

Because the value of a replacement vehicle, less the present value of the motor home and Farina's use of the motor home could not be below the $50,000 threshold, federal question jurisdiction exists, and Farina's motion to remand is denied.

### III. MOTION TO TRANSFER

The motion to transfer relies upon the forum-selection clause contained in the warranty agreement issued in connection with the sale of the motor home. The limited warranty provides, in pertinent part:

> LEGAL REMEDIES: EXCLUSIVE JURISDICTION FOR DECIDING LEGAL DISPUTES RELATING TO AN ALLEGED BREACH OF WARRANTY OR ANY REPRESENTATIONS OF ANY NATURE, MUST BE FILED IN THE COURTS WITHIN THE STATE OF MANUFACTURE, WHICH IS INDIANA.

(Doc. No. 13-2 ("Limited Warranty") at 74.) Defendants insist that this forum-selection clause applies to the purchase of the motor home because Nancy Farina ("Nancy"), Farina's wife and a non-party to this lawsuit, acknowledged the Limited Warranty. Farina maintains that Nancy never saw the provisions of the Limited Warranty, never received information relating to the Limited Warranty, and did not acknowledge receipt of the warranty provisions. Farina further argues that while Nancy may have signed the Limited Warranty, she did not initial the agreement in the appropriate places, making the agreement incomplete. (Opp'n Mot. Transfer at 103.)

Under 28 U.S.C. § 1404(a) a district court may "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented[.]" "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co.,*

*Inc. v. U.S. Dist. Ct. for W.D. of Tex.*, 571 U.S. 49, 62, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013). In deciding the motion, "the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interest of justice.'" *Id*. at 62-63 (quoting 28 U.S.C. § 1404(a)).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id*. at 63 (citation and quotation marks omitted). Under that circumstance, "a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id*. at 59-60 (citation and quotation marks omitted). By "[e]nforc[ing] . . . valid forum-selection clauses, bargained for by the parties, [the court] protects their legitimate expectations and furthers vital interests of the justice system." *Id*. at 63 (citation and quotation omitted). When presented with an agreement containing a forum selection clause, the Court must disregard plaintiff's choice of forum and the parties' private interests. *Id*. at 63-64. Instead, it "consider[s] arguments about public-interest factors only[,]" and "those factors will rarely defeat a transfer motion[.]" *Id*. at 64.

Farina advances two arguments in support of his position that the warranty's forum selection clause is inapplicable. First, he underscores the fact that he did not sign the Limited Warranty. He acknowledges that Nancy's signature appears on the Limited Warranty, but he posits that he is not bound by his wife's actions, under Ohio law, unless she was clearly acting as his agent. (Opp'n Mot. Transfer at 105; *see* Doc. No. 15-1 (Affidavit of Nancy Farina ["N.

Farina Aff."]).[5]) Second, as set forth above, Farina argues that Limited Warranty is incomplete because Nancy did not initial the document on any of the required lines. (Opp'n Mot. Transfer at 106.)

"A non-party to a contract may be bound by a forum selection clause if the party is so closely related to the dispute that it is foreseeable that the party will be bound." *Highway Commercial Servs., Inc. v. Zitis*, No. 2:07-CV-1252, 2008 WL 1809117, at *4 (S.D. Ohio Apr. 21, 2008) (citing *Marano Enters. of Kansas v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001); *Manetti Farrow, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)). "Third-party beneficiaries to a contract may be similarly bound." *Id.* (citing *Barrett v. Picker Int'l, Inc.*, 589 N.E.2d 1372, 1375-76 (Ohio Ct. App. 1990)). Courts have applied "'a common sense, totality of the circumstances approach'" to determine whether a non-signatory should have reasonably foreseen that it might be bound by the forum selection clause. *Veteran Payment Sys., LLC v. Gossage*, No. 5:14CV981, 2015 WL 545764, at *8 (N.D. Ohio Feb. 10, 2015) (quoting *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010) (assignee was closely related to parties to a hotel management agreement so as to be bound by the agreement's forum selection clause)). Applying the "common sense, totality of the circumstances approach," the Court concludes that it is appropriate to subject Farina to the forum selection clause since Farina is *very* closely related to the Limited Warranty covering the motor home he purchased. *See, e.g., Matthews v. Gen. RV Ctr.*, No. 5:16-cv-540, 2016 WL 5076096, at *2 (N.D. Ohio Sept. 20, 2016) (forum selection clause in warranty

---

[5] While Nancy concedes that the signature on the warranty "does resemble [her] signature[,]" she avers that she does not remember signing the warranty or receiving a copy of it. (N. Farina Aff. ¶ 3.)

9

covering sale of RV was enforceable against entity providing financing for the vehicle).

Moreover, it was entirely foreseeable that Farina would be subject to the Limited Warranty. Section 12 of the Purchase Agreement, signed by Farina, states:

> NON-DEALER WARRANTY(S) (IF APPLICABLE). Buyer(s) understand and agree that manufacturer(s) written warranty(s), if any are applicable to this Unit, were fully and conspicuously disclosed in writing by Dealer, by Dealer disclosing and providing any such written instruments to Buyer(s) prior to Buyer(s) signing the front side of this Agreement and Buyer(s) acknowledge having physically received such written instruments. Buyer(s) acknowledge that Dealer is not an agent of the manufacturer and that Dealer has not represented or misrepresented the terms of any applicable manufacturer(s) written warranty(s) because either (i) Buyer(s) have read to his/her/their satisfaction the actual terms of any such written instruments, which expressly state the coverage, application period, conditions, and exclusions or (ii) Buyer(s) have voluntarily chosen not to read such warranty(s).

(Doc. No. 16-2 ("Purchase Agreement") at 120.) Based on this provision, Farina himself acknowledged physically receiving the Limited Warranty and either reading it to his satisfaction or voluntarily choosing not to read it. It is a "long-held principle that parties to contracts are presumed to have read and understood them and that a signatory is bound by a contract that he or she willingly signed." *See Preferred Capital, Inc. v. Power Eng'g Grp., Inc.*, 860 N.E.2d 741, 745 (Ohio 2007); *see, e.g., Messmer v. Thor Motor Coach, Inc.*, 3:16-cv-1510-J-JBT, 2017 WL 933138, at *4 (M.D. Fla. Feb. 28, 2017) (finding forum selection clause contained in limited warranty in owner's manual was contractually valid, where plaintiff signed "Registration and Acknowledgement" of limited warranty, which referenced the owner's manual).

Because Farina acknowledged receipt and review of the Limited Warranty, he bears the burden of establishing that transfer to Indiana is unwarranted through an analysis of the public-interest factors. *See Atl. Marine Const. Co.*, 571 U.S. at 64. However, Farina's response focuses primarily on the private-interest factors, such as the convenience of the parties and the witnesses.

He offers little or no argument as to the public-interest factors, and, therefore, he has failed to demonstrate that transfer under the forum selection clause is unwarranted.[6] *See, e.g., Knecht v. Thor Motor Coach, Inc.*, No. 1:17-cv-2374, 2017 WL 6546321, at *3 (N.D. Ohio Dec. 22, 2017) (granting motion to transfer where plaintiff relied only upon private interest factors). Moreover, the Court finds no reason to believe that a federal district court in Indiana would be unable to apply Ohio law to the state court claims; nor is there any reason to believe that the other public-interest factors render this one of the exceptional cases wherein a valid forum selection clause should not govern.

Accordingly, the motion to transfer this action is granted.

### IV. CONCLUSION

For the above reasons, the motion to remand is DENIED, and the motion to transfer is GRANTED. This case is hereby TRANSFERRED to the United States District Court for the Northern District of Indiana, South Bend Division.

**IT IS SO ORDERED**.

Dated: June 11, 2019

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[6] Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981).